**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **AKISHE TURNER** | **CIVIL ACTION** |
| **VERSUS** | **NO.  22-1370** |
| **UNITED STATES OF AMERICA, ET AL.** | **DIVISION "5"** |

**ORDER AND REASONS**

Before the Court is Defendant's Motion for Summary Judgment.   (Rec. doc. 33).

Plaintiff has filed an opposition to the motion (rec. doc. 38) and Defendant has filed a reply.

(Rec. doc. 41).  Having reviewed the pleadings and the case law, the Court rules as follows.

**I.      Background**

Plaintiff's Complaint (rec. doc. 1) and Amended Complaint (rec. doc. 31) are difficult

to follow.   The pleadings are peppered with acronyms that are unexplained, the events

described are not in chronological order, and spelling errors and incomplete sentences

abound.  Indeed, the name of Plaintiff is even unclear: In some documents, she is referred to

as "Akishe Turner," in others "Akisha Turner."   And one of the now former Defendants is

often "Kevin Oliver" but sometimes "Keith Oliver."   Notwithstanding all this, what the Court

has been able to glean from the pleadings is as follows.

Plaintiff, an African-American female and disabled veteran, began working for the

United States Department of Veterans Affairs in May 2008.  (Rec. doc. 31 at 2).  On May 16,

2022, Plaintiff sued Defendants under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et

seq.*, and the Americans with Disabilities and Rehabilitation Acts, 29 U.S.C. §§ 791 *et seq.*  In

her original Complaint, Plaintiff named as Defendants the United States of America, the

Department of Veterans Affairs, the Veterans Administration Medical Center of New Orleans,

and Kevin Oliver, in his capacity as a Health Systems Specialist.  (Rec. doc. 1).  On March 28, 2023, this Court dismissed as moot Defendants' motion to dismiss and granted Plaintiff's motion to amend her complaint to add the proper Defendant, Denis McDonough, Secretary of the Department of Veterans Affairs.  (Rec. docs. 30, 31).

Before she filed her lawsuit, Plaintiff had submitted a charge of discrimination to the Equal Opportunity Commission ("EEOC"), which framed Plaintiff's claims as follows:

> Whether the complainant was subjected to a hostile work environment based on race (Black), sex (female), and disability as evidenced by the following events:
> 1. From March 1 thru April 16, 2021, Kevin Oliver (KO), Health Systems Specialist charged the complainant approximately 97 hours of absent without leave (AWOL).
> 2. On April 7, 2021, KO moved all of the complainant's belongings and professional files out of her office on her day off and placed them in front of his office.

(Rec. doc. 33-5 at 1).

The first claim revolves around Oliver's marking Plaintiff's near seven-week absence without notice from March 1 through April 16, 2021 as AWOL and not as leave without pay ("LWOP") under the Family Medical Leave Act ("FMLA").  (Rec. doc. 31 at 3).  Plaintiff alleges that she suffers from chronic migraines that incapacitate her at times, (rec. doc. 33-6 at 1-2), and she has often requested FMLA leave, to no avail.  (Rec. doc. 31 at 3).  The second claim accepted by the EEOC stems from Oliver's removal from Plaintiff's office of her personal belongings on April 7, 2021 and placement of them in front of his own office.  (Rec. doc. 33-5 at 1).  These were the only two claims accepted and investigated by the EEOC.

## II.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.  If the moving party meets that burden, then the nonmoving party must marshal evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477

3

U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

III.     **Exhaustion**[1]

"Before a plaintiff may file suit in federal court under either Title VII or the ADA, the plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (citing *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378-79 (5th Cir. 2019) (per curiam)).  "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)); *see also Cormier v. Wal-Mart Stores, Inc.*, 145 F. Supp. 3d 666, 667 (W.D. La. 2015) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party within 180 days of the alleged discrimination and receive statutory notice of the right-to-sue the respondent named in the charge.").  While "administrative exhaustion is not a jurisdictional requirement, it is still a requirement." *Stroy v. Gibson on behalf of Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018) (affirming district court's dismissal of plaintiff's employment discrimination suit when plaintiff failed to exhaust administrative remedies and offered no justification for failing to do so besides his "good faith effort").

"The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (citation omitted); *Sims v. La. State*, No. CV 22-2609, 2023 WL 405443, at *3 (E.D. La. Jan. 25, 2023).  "Any charge not

---

[1] Plaintiff does not address exhaustion in her opposition.

alleged in the EEOC complaint and/or reasonably expected to grow out of the EEOC investigation is barred from judicial review." *Oramous v. Mil. Dep't of La.*, No. 05-3677, 2007 WL 2344921, at *1 (E.D. La. Aug. 15, 2007).

Here, Turner only exhausted two discrete claims before the EEOC.  First, for both disparate impact and as a part of Turner's hostile work environment claims, "[f]rom March 1 thru April 16, 2021, Kevin Oliver (KO), Health Systems Specialist charged the complainant approximately 97 hours of absent without leave (AWOL)."  (Rec. doc. 33-5 at 1).   Second, that on April 7, 2021, Oliver removed Turner's personal belongings and professional files from her office.  (*Id.*).

However, Turner's Complaint and Amended Complaint appear to allege a host of claims that occurred from July 2018 through February 2021.  (Rec doc. 31).  Moreover, the Amended Complaint seems to allege claims that were not exhausted, including: (i) denial of leave in July 2018; (ii) being marked AWOL for using the bathroom during July 2018; (iii) denial of leave in August 2018; (iv) being relocated seven times during the period of September 2018 through 2021 (to the extent these do not involve the April 7, 2021 event, which is wholly unclear); (v) theft of $389.00 of personal property; (vi) removing Turner's property from her office and throwing it in the trash; (vii) retaliation by ignoring LWOP requests due to Hurricane Ida; and (viii) a failure to accommodate.  (*Id.*).  Plaintiff did not exhaust <u>any</u> of these claims with the EEOC, and they would not be expected to grow out of Plaintiff's charge with the EEOC.  As such, any claim that arose before March 1, 2021 has not been exhausted and must be dismissed without prejudice.[2]

---

[2] Because non-exhaustion due to failing to file an EEOC charge is not a jurisdictional defect, *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019), "the appropriate disposition of Title VII claims that have not been

## IV.    Discrimination

"Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc).[3]  The burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny establish the respective burdens and standards for plaintiffs and defendants on a motion for summary judgment for causes of action under Title VII based on circumstantial evidence. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 & n.6 (5th Cir. 2012); *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).[4]  Under this framework,

exhausted is dismissal without prejudice." *Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. CV 19-11410, 2020 WL 5095274, at *2 n.26 (E.D. La. Aug. 28, 2020) (dismissing the unexhausted Title VII claims without prejudice, allowing the plaintiff to later return to court after she exhausted her administrative remedies, but emphasizing that the court "ha[d] not [yet] made a finding as to whether any claim filed after exhaustion would be timely."); *see also Barnett v. La. Dep't of Health*, No. CV 17-1793, 2023 WL 2467877, at *12 (M.D. La. Mar. 10, 2023), *supplemented*, No. CV 17-1793-JWD-SDJ, 2023 WL 2467876 (M.D. La. Mar. 10, 2023) (same).

[3] The Fifth Circuit applies Title VII jurisprudence for disparate treatment claims under the Rehabilitation Act. *See Daigle v. Lib. Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (applying *McDonnell Douglas*); *see also Jackson v. Wilkie*, No. 419CV00721SDJCAN, 2020 WL 4912916, at *12 (E.D. Tex. July 21, 2020), *report and recommendation adopted*, No. 4:19-CV-721, 2020 WL 4884003 (E.D. Tex. Aug. 20, 2020) ("The same 'remedies, procedures, and rights' set forth in Title VII of the Civil Rights Act for other employment-discrimination claims applies to disability-discrimination claims under the Rehabilitation Act." *Coutee v. Wilkie*, No. CV H-19-2312, 2019 WL 6118901, at *2 (S.D. Tex. Nov. 18, 2019) (quoting 29 U.S.C. § 794(a)).

Moreover, it should be noted that any claims asserted by Plaintiff under the ADA are preempted by the Rehabilitation Act.  *See Kaswatuka v. United States Dep't of Homeland Sec.*, No. 4:19-CV-947-A, 2020 WL 3038073, at *2 (N.D. Tex. June 5, 2020) (noting that the ADA does not apply to federal employees because "the provisions of the ADA are made applicable to federal employees through the Rehabilitation Act.").  Plaintiff does not elaborate on what specific claims she raises under the ADA or what specific conduct she believes to have violated the ADA.  However, because the Court finds that any such claims raised under the ADA would be proper only under the Rehabilitation Act, the Court need not consider what ADA claims, if any, Plaintiff seeks to raise separate and apart from her Rehabilitation Act claims.  Accordingly, the Court finds that any of Plaintiff's claims raised under the ADA should be and will be dismissed.

[4] In her opposition, Plaintiff contends that she has offered direct evidence of discrimination.  "'Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption.'" *Daniel v. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, No. 21-30555, 2022 WL 1055578, at *5 (5th

Plaintiff has the initial burden of proving a *prima facie* case of retaliation or discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework, "an employee must demonstrate that she '(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Garrison v. Tregre*, No. CV 19-13008, 2021 WL 6050179, at *2 (E.D. La. Dec. 21, 2021) (quoting *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014)).

If a *prima facie* case is made, a presumption of discrimination arises, and the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the alleged adverse employment action. *Broadway v. United States Dep't of Homeland Sec.*, Civ. A. No. 04-1902, 2006 WL 2460752, *3 (E.D. La. Aug. 22, 2006). "Defendant's burden is one of production, not persuasion. . . ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). A defendant must merely set forth, through admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful

---

Cir. Apr. 8, 2022) (quoting *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328-29 (5th Cir. 1994)) (alteration omitted)). "'Statements or documents which show on their face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action are direct evidence of discrimination.'" *Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 255 (5th Cir. 2020) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)) (alterations omitted); *see also Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) ("'In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face.'") (quoting *Portis*, 34 F.3d at 329); *Wilkinson v. Pinnacle Lodging, L.L.C.*, No. CV 20-3427, 2022 WL 3083437, at *5 (E.D. La. Aug. 3, 2022) (same). Plaintiff offers no such direct evidence here.

discrimination was not the cause of the employment action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  This causes the presumption of discrimination to dissipate.  *Smith v. Aaron's Inc.*, 325 F. Supp. 2d 716, 724 (E.D. La. 2004).

At the third stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is a pretext for intentional discrimination.  *Price v. Fed. Express*, 283 F.3d 715, 721 (5th Cir. 2002) (citing *Hicks*, 509 U.S. at 507-08).  On summary judgment at this third step, the plaintiff must substantiate her claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision.  *Price*, 283 F.3d at 721.  Even when such a showing is made, however, it will not always be enough to prevent summary judgment if no rational factfinder could conclude that the action was discriminatory.  *Id.*  (citing *Reeves*, 530 U.S. at 148).  As the *Reeves* court explained,

> The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.  In other words, it is not enough . . . to dis believe [sic] the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.
>         . . . Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. . . .

530 U.S. 146-48 (internal citations omitted).  "Whether summary judgment is appropriate depends on numerous factors, including the strength of the plaintiff's prima facie case, the

probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.*

### A. Disparate Treatment

"Disparate treatment refers to deliberate discrimination in the terms or conditions of employment . . . on account of race, national origin, or gender." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). When a plaintiff builds a case on circumstantial evidence, the court analyzes that claim under the *McDonnell Douglas* framework. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

To establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) a similarly situated employee outside of her protected group was treated more favorably. *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021) (citing *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007)). As the Fifth Circuit has held, there are two ultimate elements that a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action" (2) taken against a plaintiff "because of her protected status." *See Raj v. La. State Univ.*, 714 F.3d 322,

331 (5th Cir. 2013) (explaining that a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably") (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004)); *Pacheco*, 448 F.3d at 787 (a "discriminatory motive is required" for disparate treatment claims). An "[a]dverse employment action[] include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensation. An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Welsh v. Fort Bend Indep. School Dist.*, 941 F.3d 818, 824 (5th Cir. 2019).

Defendant first argues that Plaintiff cannot establish a *prima facie* case of discrimination because she cannot identify a comparator. The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of [her] protected class who was treated more favorably "under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[ ] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). The Title VII comparator need only be similar – not identical. *Id.* at 427 n.10.

For example, in *Alkhawaldeh*, the plaintiff

identifie[d] himself as a Muslim Jordanian Arab FS/FL in Dow's Epoxy Research and Development Group. Therefore, in order for Ammar to satisfy

> the "similarly situated" prong, he must identify at least one non-Muslim Jordanian Arab FS/FL in Dow's Epoxy Research and Development Group who received a 1 rating, as he did, and who completed a PIP, as he did, but who was not fired, as he was.

*Id.* at 427.   Here, Turner identifies as a disabled African-American female who works as a Program Analyst in the Department of Primary Care Services with a pay grade of G-11 whose time was marked AWOL and whose property was moved out of her office.   Turner must therefore identify a non-disabled non-African-American female with a similar position and the same supervisor, who committed the same infractions as Turner, but whose time was not marked AWOL and whose property was not moved out of her office.

Plaintiff identified Trinette Pichon and Kathy Joseph as comparators.   (Rec. doc. 33-7 at 9).   Both Pichon and Joseph are African-American females – the same protected class as Turner – and both were supervised by Oliver.   (Rec. doc. 33-6 at 13; rec. doc. 33-7 at 9).   No other facts are provided regarding Pichon or Joseph.   While Pichon and Joseph had their leave requests approved and were not coded as AWOL (rec. doc. 33-7 at 9), Turner was given the same opportunity as Pichon and Joseph to have her leave coded as LWOP and not AWOL after her FMLA request had been approved.   (Rec. doc. 33-7 at 8).   Oliver attested:

> <u>Ms. Turner was treated exactly the same.</u> **The difference is that Ms. Turner refused to communicate with management (Myself, Dr. Elizabeth Bowles, or Dr. Anthony Marsh) on her leave and absences. She refused to call, text, or email her requests for absences as outlined in the HR FMLA Letter (attached). Ms. Turner's FMLA memo that was sent to her and management clearly states:**
> "Be advised that in emergency or unforeseen situations, you are expected to notify your Supervisor of your need to take FMLA leave as soon as possible, but no later than two hours after you are scheduled to report for duty. Failure to do so may result in charging of absence without leave (AWOL). **You must adhere to New Orleans VAMC leave policies and procedures when requesting FML".**

Ms. Turner was afforded the opportunity to request that the medical center Director change her AWOL to LWOP upon her return to work and that service submission of the request memorandum.  She did not return to duty to my knowledge.

(*Id.*) (emphasis in original).  Simply put, Turner was not similarly-situated to Pichon and Joseph, and even when offered the same opportunity as Pichon and Joseph to have her leave coded as LWOP, she simply failed to avail herself of it.

Plaintiff has failed to identify a single similarly-situated employee who was treated more favorably than her.  This alone justifies dismissal of her Title VII claim.  It is well-established that a Title VII claimant can only prove disparate treatment by presenting evidence that she was treated less favorably *than others outside of her protected class.  See Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 409 (5th Cir. 2016).  "Title VII was enacted to prohibit discrimination on the basis of race, gender, and other legislatively enumerated grounds."  *Alkhawaldeh*, 851 F.3d at 427 (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 262 (4th Cir. 2008)).  It was not enacted to promote "general fairness in the workplace, or . . . to protect against" the indiscriminate treatment of employees.  *Id.*

Defendants also contend that Plaintiff cannot establish a *prima facie* case of disparate treatment because she suffered no adverse employment action.  "Adverse employment action" refers to an employment decision that negatively affects the compensation, terms, conditions, or privileges of employment.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281-82 (5th Cir. 2004) (citations omitted).  In the context of a discrimination claim, adverse employment actions involve "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating.  *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram*, 361 F.3d at 282.  Because an adverse employment

action is an element of a discrimination claim, a plaintiff must put forth sufficient proof that she suffered an adverse employment action because of discrimination. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).   Conclusory allegations that do not contain sufficient content to allow the Court to draw the inference that the alleged adverse act was based on the protected characteristic do not satisfy the facial plausibility requirement for a discrimination claim. *Thomas v. Burrows*, Civ. A. No. 22-3511, 2023 WL 1783694, at *4 (E.D. La. Feb. 6, 2023).   "The Fifth Circuit has a "strict interpretation of the adverse employment element." *Peuler v. Jewell*, Civ. A. No. 14-0247, 2016 WL 5930242, at *5 (E.D. La. Oct. 12, 2016) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)).

Here, Plaintiff complains that she was coded AWOL when she missed seven weeks of work without providing notice pursuant to company policy.   Even though Plaintiff was coded AWOL instead of LWOP, she would not have been paid for this time off whether she was coded AWOL or LWOP.   Moreover, while her leave was not granted, Turner was also provided the opportunity to convert the AWOL time to LWOP but chose not to participate in the process.   (Rec. doc. 33-7 at 8) ("Ms. Turner was afforded the opportunity to request the medical center Director change her AWOL to LWOP . . .").   Indeed, Plaintiff was not even disciplined regarding her AWOL time. (Rec. doc. 33-8 at 6) ("AWOL is not a disciplinary action.  It only tells the employee that he/she will not be paid for those hours").

Turner did not suffer a change in job duties, compensation, or benefits as a result of being coded AWOL and, thus, did not suffer an adverse employment action as a matter of law.   *See, e.g., Peuler*, 2016 WL 5930242, at *5 (finding the plaintiff "failed to produce evidence of an adverse employment action" despite claiming she was marked AWOL).

14

Indeed, Plaintiff acknowledged in an email dated February 5, 2021 that she had "been trusted with additional duties because of [her] professional performance."  (Rec. doc. 33-6 at 13).  There is no genuine issue of material fact whether Plaintiff suffered an adverse employment action within the confines of Title VII – she did not.[5]

### B.  Hostile Work Environment

Title VII also makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."  *West v. City of Houston, Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (citing *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 920, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Id.* (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).  To survive summary judgment on a hostile work environment claim based on race or sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on her protected class status; (4) the harassment "affected a term, condition or privilege of employment"; and (5) "that the employer knew or should have known" about the harassment and "failed to take prompt remedial action."  *Id.* (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).  The last element may not apply when the harassment is committed by a supervisor who is responsible for the terms and conditions of the plaintiff's employment, for the plaintiff's

---

[5] Because the Court finds that Plaintiff fails to establish a *prima facie* case of discrimination, it need not consider whether Defendants produced a legitimate, nondiscriminatory reason for any alleged adverse employment action, which Plaintiff did not suffer in any event.

work assignment within the company, or for hiring or firing decisions.   *See Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993).

To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.   *Id.* (citing *Aryian v. Walmart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)).   The conduct must be objectively and subjectively hostile or abusive. *Id.* (citing *Harris*, 510 US at 21-22).   The totality of the employment circumstances determines whether an environment is objectively hostile. *Id.* (citing *Harris*, 510 U.S. at 23). Although no single factor is determinative, pertinent considerations are: (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."   *Id.*   While courts may consider conduct outside the actionable period, that conduct "can only be viewed as relevant background conduct." *Ramsey*, 286 F.3d at 268.   In this case, Plaintiff complains of conduct well outside of the actionable period, March 1, 2021 through April 16, 2021.   Even though the Court can consider that conduct as relevant background material, the Court finds that Plaintiff's *prima facie* case still fails.

Plaintiff produces no evidence that race, sex, or disability motivated any harassment. Specifically, she does not produce evidence that either race, sex, or disability was the reason that her time was coded AWOL or that her belongings were moved out of her office during her absence.   The reasons that Oliver coded her time as AWOL are outlined in detail above.

And there is no evidence to support a finding that Oliver moved her belongings out of her office because of her race, sex, or disability.

Moreover, there is no evidence to support the idea that coding Plaintiff's time as AWOL – when she disappeared for seven weeks and failed to notify her employer of her absence pursuant to company policy – or the moving of her belongings out of her office – when she was on unapproved leave – were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.  When Oliver moved Plaintiff's belongings out of her office, Plaintiff occupied an office typically assigned to the PCMM,[6] a position that had just been filled.  (Rec. doc. 33-7 at 6).  Plaintiff knew she had to vacate the PCMM office by at least February 5, 2021.  (Rec. doc. 33-6 at 13) (acknowledging request to move).  Rather than move offices as directed, Plaintiff stopped attending work – without notice – beginning on March 1, 2021.  (Rec. doc. 33-7 at 6; Rec. doc 33-11 at 14-16).

Oliver only moved Plaintiff's personal belongings and professional files to accommodate the new PCMM after Plaintiff had not returned to work for over a month.  (Rec. doc. 33-7 at 6; Rec. doc. 33-11 at 14-16).  Although Plaintiff did not return to work for at least another week or two after Oliver moved her belongings out of her office, Turner came to work that weekend to take her belongings home.  (Rec. doc. 33-7 at 6).

Plaintiff does not claim that her office location was critical for her job.  Indeed, she even admitted that she had no problem with any office to which Oliver moved her.  (Rec. doc. 33-6 at 13) ("Though I do no have any issue with space . . . .").  The evidence reveals that from January 1, 2021 until April 19, 2021, Turner used 408.25 hours of various leave.  (Rec. doc.

---

[6] This acronym is undefined.

33-11 at 14-16).  Simply put, Turner was often absent from work.  No reasonable employee would view an office change as being sufficiently pervasive or severe to alter the terms, conditions, or privileges of Plaintiff's employment and create an abusive working environment.  *Hiner v. McHugh*, 546 F. App'x 401, 408 (5th Cir. 2013).  Because Plaintiff does not offer a single example of how a "term, condition, or privilege" of her employment was affected by Oliver's actions, the Court finds that this claim must fail.  *Id.*

To the extent Plaintiff offers her AWOL status as a basis for the hostile work environment claim, that claim also fails.  Again, Plaintiff has offered no evidence that her AWOL status affected a term, condition, or privilege of her employment.  As noted above, AWOL status is not a disciplinary action but only notifies the employee that she will not be paid for that time.  Indeed, had Plaintiff's hours been coded LWOP, she would not have been paid in any event.  Moreover, Plaintiff has produced no evidence that she followed Agency policy for using her FMLA leave by notifying her supervisors.  Oliver coded Plaintiff's hours as AWOL pursuant to his employer's policy.  (Rec. doc. 33-7 at 5).  Plaintiff was afforded the right to convert her AWOL time to LWOP yet failed to do so.  (*Id.* at 8).  Again, Plaintiff was not disciplined for her AWOL time and would not have been paid for these absences regardless.  (Rec. doc. 33-8 at 6).  No reasonable employee would consider the Agency following its policy to be sufficiently pervasive or sever to alter the conditions of Plaintiff's employment and create an abusive working environment.  Accordingly, there is no genuine issue of material fact as to the existence of a hostile work environment as a matter of law.

### C. Prematurity

Plaintiff argues that Defendant's motion for summary judgment is premature because she needs more time to conduct discovery. Rule 56(f) governs the need for discovery on a motion for summary judgment "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition. . . . The Rule is an essential ingredient of the federal summary judgment scheme, and provides a mechanism for dealing with the problem of premature summary judgment motions." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). The discovery authorized by Rule 56(f) is a safe harbor built into the rules so that summary judgment is not granted prematurely. *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987). To comply with the rule, the party opposing summary judgment need only file the specified non-evidentiary affidavit, explaining why it cannot oppose the summary judgment motion on the merits. *Id.* Nevertheless, a claim that further discovery or a trial might reveal facts of which the nonmovant is currently unaware is insufficient. *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988). The party may not rely on vague assertions that additional discovery will produce needed, but unspecified, facts, *Union City*, 823 F.2d at 137, but instead must identify a genuine issue of material fact that justifies the need pending further discovery. *See Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1415 (5th Cir. 1987). A party seeking discovery to respond to a motion for summary judgment must demonstrate why it needs additional discovery and how the additional discovery will create a genuine issue of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993). It must show a genuine issue of material

19

fact that requires postponement for discovery, *see McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991), and must present specific facts explaining its inability to make the substantive response required by Rule 56(e).  *See Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 167 n.25 (5th Cir. 1991).

Plaintiff – as the party opposing summary judgment – did not file a specified non-evidentiary affidavit explaining why she cannot oppose the summary judgment motion on the merits.  She fails to explain why she needs additional discovery and how the additional discovery will create a genuine issue of material fact.  Plaintiff relies solely on vague and conclusory assertions that additional discovery will produce needed, but unspecified, facts that may aid her in opposing the motion for summary judgment.  These assertion are insufficient to satisfy the need for discovery under the case law outlined above

## V.    Conclusion

"Title VII is not a general civility code for the American workplace."  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999).  Instead, Title VII and the Rehabilitation Act prohibit only certain employment actions taken "*because* of [an] individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a) (emphasis added).  A plaintiff's Title VII and Rehabilitation Act claims are properly dismissed when her "allegations do not contain any connection, either explicit or implicit, between her membership in a protected class and the alleged activity."  *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (per curiam).  Stated differently, whatever the morality or lack thereof of the conduct may be, hostile or uncouth behavior that is unrelated to any protected trait does not create disparate treatment discrimination or a hostile work environment in the eyes of the law.  *Burns v.*

*Brennan on behalf of U.S. Postal Serv.*, 803 F. App'x 776, 777 (5th Cir. 2020).  Although Plaintiff alleges that she was treated poorly by Defendant, she has not alleged any facts creating a genuine factual dispute as to whether the discrimination and harassment were *because* of any protected trait.  Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (rec. doc. 33) is **GRANTED**.  Plaintiff's unexhausted claims – *i.e.*, any claim that arose before March 1, 2021 – are **DISMISSED WITHOUT PREJUDICE**.[7]  Plaintiff's claims exhausted before the EEOC and any potential claims under the ADA[8] are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __14th__ day of _____August_____, 2023.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] This Court specifically makes no finding as to whether any of Plaintiff's unexhausted claims would now be timely before the EEOC or this Court.  *Dowdell*, 2020 WL 5095274, at *2 n.26.

[8] *See supra* n.3.